Daniel, Judge.
 

 The bill states, that at December session, 1811, of Washington County Court, Gabriel L. Stewart applied to be appointed guardian to the plaintiff’s intestate, Anthony Armistead, then an infant; that said Stewart proffered and tendered Levin Bozman and Asa Hardison, as sureties to the guardian bond, who declared their willingness to enter into the proper engagement as such, and were approved by the court. The court thereupon appointed Stewart guardian, and made an order that he and the said sureties should execute, according to law, a guardian bond for the benefit of the ward, in the penal sum of £1250. The bill further states, that the clerk of the court prepared a paper writing as for a guardian bond, which was executed by the said Stewart, Bozman and Hardison. The bill states, that it was the
 
 intent
 
 of the court, and also of Stewart, Bozman and Hardison, that the bond should be in the form prescribed by law; but, from ignorance and mistake in the clerk, the draughtsman thereof, the same was made payable to “James Jones, Esq,, and the rest of the Justices assigned to keep the peace for Washington county”; that Bozman being one of the justices for said county, was therefore both obligor and obligee in the said bond, and the paper writing, which was intended by the parties to be a good and legal guardian bond, was pronounced a nullity in a Court of Law, in con
 
 *119
 
 sequence of the mistake of the clerk in drawing it in the form and manner aforesaid. A copy of the bond makes part of the case. The bill states that Stewart acted as guardian of his ward, Anthony Armistead, until the 8th day of October, 1827, when the ward came of full age: that Stewart had become insolvent, and had failed to account for the property, money or effects of the ward, on his coming of age, or at any time since. Bozman died owthe 8th day of December, 1823, seized and possessed of a large real and personal estáte. Hardison died in the year 1819, seized and possessed of real and personal estate. This bill for an account was died against Stewart and the heirs at law, legatees and distributees of the two sureties; the administrators or executors of the sureties having died and no other personal representative having been appointed. — .since the filing of the bill, Stewart has died insolvent, intestate, and has no personal representative. This bill was filed by Anthony Armistead, the ward, against the present defendants, on the 24th of February, 1831: it abated by Armistead’s death, and was revived, by leave of the court, by the plaintiff, his administrator, on the 15th of July, 1831.
 

 The defendants by their answers do not admit that Stewart was appointed by the court, guardian to Anthony Armistead, nor do they admit or believe any of the circumstances attending the execution of the bond, as set forth in the bill, to be either true or probable They do not believe or admit that Bozman and Hardison were formally offered to and approved by the Court, as sureties for Stewart; and that the said Bozman and Hardison declared their readiness to enter into the proper engagements as such; nor do they believe or admit that the Court directed Stewart, Bozman and Hardison to execute a guardian bond according to lav/, for the benefit of Armistead; nor do they admit that the clerk drew the bond mentioned in the bill, as for a bond so directed to be drawn according to law; nor do the defendants admit or believe it to be true that it was the intent of the Court, Stewart, Bozman, and Hardison, that the bond should be in the form prescribed by law; nor was it by the ignorance or mistake of the clerk that the bond was drawn in the manner set forth in the
 
 *120
 
 bill; nor did the Court, Stewart, or the sureties, place any confidence in the skill or correctness of the clerk; nor did intend the bond to be in any other form, or payable to any ther persons, than those set forth in the written paper purporting to be a bond. The defendants in no manner or ways admit that there was any mistake. They believe that the clerk draughted the bond in this form according to the intent of the Court; that the sureties did not intend to sign a bond in any other form; and that they are not liable to account, either in law or equity, to the plaintiffs. The heirs, legatees and distributees of both Bozman and Hardison, rely on the act of 1715, barring claims against deceased persons’ estates, (1 Rev. Stat. c. 65, s. 11,) seven years having elapsed since the death of each of their ancestors, before the filing of the present bill.
 

 The plaintiffs, omitted to file a replication to the answers of the defendants; but the canse is set down for hearing “ on the bill, answers and exhibits, (see exhibits 1, 2, 3, 4,”) and sent to the Supreme Court for trial.
 

 It seems to us that the act of 1715 (1 Rev. St. c. 65, s. 11) is not a protection to the defendants against the plaintiff’s claim for an account. The plaintiff had no claim upon the -defendants, until the ward arrived at full age, and the guardian failed to account. That time did not happen until the 8th day ofOctober, 1827, and a bill was filed by the ward on the 24th day of February, 1831. The ward shortly thereafter died; and at Spring Term, 1831, his death was suggested, and an order made giving leave to his personal representative to file a Bill of Revivor, which was done on the 15th of July, 1831. To give operation to the act of limitations, there must not only be a creditor, but there must be a claim; a right in the creditoi to demand a debt, or challenge the possession of property which is wrongfully withheld from him. The plaintiff’s intestate, although a creditor, could not claim possession of his property until he arrived at full age. By a correct interpretation of the act of 1715, the seven years do not begin to run on the death of the debtor, unless the creditor has also a right at that time to claim. A strong case has been put, proving this construction to be correct, to
 
 *121
 
 wit, where a debtor, having given a bond payable ten years after date, dies immediately; if the time was to be computed from the death of the debtor, the creditor might be deprived of his debt, without any
 
 laches
 
 or default in him. This point in the case seems to be settled against the defendants by a decision in this Court,
 
 Godley
 
 vs. Taylor, 3 Dev. 178.
 

 Godley yS. ¿ev! m! and approved.
 

 ruIe t that when a toan°an-0n by misyet witness-exam¡ne<Mhe^ replication to be filed
 
 nunc pro
 
 tunc.
 

 Secondly, it is contended on behalf of the defendants, that as there is no replication taken to the answers, all the statements therein must be taken as true; that the case in fact comes on for a hearing only upon the bill and answers. . ° -. i»*/» is certainly true; as a general rule, that if an answer be not replied to, it is to be considered as true.
 
 Wright
 
 vs.
 
 Nutt,
 
 3 Bro. 340, 2 Mad. Ch. Pr. 336. That is, where the order, bringing on the cause to a hearing, clearly sets it down only on bill and' answer. But in this cause, the entry on the record is, “ ordered that this cause be set for hearing on the bill, answers and exhibits. See the exhibits, sent herewith, marked No. 1, 2, 3,4.” This shews that the plaintiff did not mean to admit the truth of the answers; and that the defendants so understood him, or they would not have consented that such an order should have been made. It is a very clumsy practice, we must admit. The defendants consented, it is presumed, because it was known that it was a rule of the Court, that when, by mistake, a replication has not been filed, and yet witnesses have been examined, the Court wall permit a replication to be filed
 
 nunc pro tune,
 
 Mitf. 256 — Mad. Ch. Pr. 276. The exhibits were certainly tended by the parties to be brought to our notice as evidence in the cause; and if they shew to us that a mistake has been committed, the evidence must have its effect, notwithstanding what is stated in the answers. Exhibit No. 3 is in the lowing words:
 

 “STATE OF NORTH CAROLINA, Washington County,
 

 Court of Pleas and Quarter Sessions, December Term, 1811.
 

 Appeared in open Court Gabriel L. Stewart, for the guardianship of the orphans of Robert Armistead, deceased, viz: John, Robert,' Thomas and Anthony .Stewart, and gives bonds for each in the sum of twelve hundred and fifty pounds
 
 *122
 
 each; and gives for security Asa Hardison and Levin Borman, Esquires.”
 

 We are induced to think, from this exhibit, notwithstanding what is said in the answers, that Stewart and the ancestors ^’le defendants intended to execute a guardian bond, in such form and substance, as would have been good at law. The Court, Whose duty and interest it was to take a good and sufficient bond, cannot be presumed to have intended lo dispense with -such a bond; neither can it be presumed that the Court gave special directions that the bond should be-drawn by the clerk in the manner the one prepared by him was drawn. Neither does the evidence satisfy us that the form in which 'the guardian bond was drawn, was the form in which guardian bonds were usually taken, according to the course of the Court. Stewart applied for the guardianship, and tendered to the Court Hardison and Bozman as his securities. The Court cannot be presumed to have intended to do ah illegal or an useless thing.. It cannot be presumed ’that they all -intended that Stewart should get pos’session of his ward’s 'estate, without giving that security which the law required. It was the duty of the Court to judge of the fitness of the guardian and of the ability of the 'securities, -and to fix the sum for which the penalty of the -bond should be given. On the clerk devolved the duty of ’preparing the bond. The paper writing, draughted by him ’as a bond, was in law a nullity. It was, in our opinion-, drawn wrong through the mistake, or rather through,the ignorance-, of the clerk. Exhibit No. 2, is a copy of the bond. It does not appear from it that it was taken in or shewn to the Court. Looking through the bill,'answers and exhibits^ we are forced to the conclusion -that the Court, guardian, and 'his securities, intended and agreed that a proper and legal-guardian bond should be prepared by the clerk; which the .guardian ánd his securities intended and agreed to execute; and which they believed they had executed. We see nothing to induce us to conclude that the bond was drawn according to the course of the Court, or that this particular form was directed by the Court. The mistake, as it seems to us, was one of fact, and not one of law.
 

 
 *123
 
 The case of. p^"nTSo Hay- 332, approved.,
 

 In the third place. Will a Court of Equity, after the mistake is made to appear, set up the instrument as a bond against the sureties? Will this Court make the sureties ble, who were never at any time liable at law? On this point we have not been clear of doubt; but, upon mature consideration, we have come to the conclusion that both justice and the law are with the plaintiff. Where the intention is manifest, a court of equity will always relieve against mistakes in agreements. 2 Atk. 203, 1 Ves. 317; and it will, even against a surety, who never was bound at law,
 
 Crosby
 
 vs., Middleton, Prec. in Chancery 309, which overrules what was said by the Chancellor in
 
 Ratcliffe
 
 vs.
 
 Graves,
 
 1 Vern. 196, that he would not charge the sureties farther than they were answerable at law. In
 
 Weser
 
 vs.
 
 Blaikley, 1
 
 Johns. Ch. Rep. 607, it was held, that where a bond, given by a surety for the guardian of an infant, was taken by the surrogate in the name of the
 
 people,
 
 instead of the infant, as the act of Assembly in the State of New York required, a court of equity would corrrect the mistake, and consider the bond of equal validity as if taken in the name of the infant. The Court said “ that where the intention is manifest, it will always relieve against mistakes in agreements, and that as well in the case of a surety as in any other case. It would be intolerable that such a mistake should prejudice or destroy the rights of the infant.”
 
 Huson
 
 vs.
 
 Pitman,
 
 2 Hay. 332, was a bill in equity to be. relieved against a surety to an appeal bond, which had not' been drawn according to law, through the mistake of the draughtsman; he had omitted the clause obliging the surety to pay the debt, &c. The court decreed for the plaintiff on the ground of mistake in drawing the bond. The foregoing authorities have brought us to the conclusion that the parties in this case are liable in equity to this demand.
 

 It has occurred to us that it might be an objection that the plaintiff has not made the personal representatives of Bozman and Hardison parties. It was not taken in the argument, and, if valid generally, we think it no bar here. Those representatives are dead; and the answers admit that the whole estates have come to the defendants’ hands, and ex
 
 *124
 
 pressly submit to account in respect of the property, if they are chargeable at all in this Court upon the bond.
 

 There must, therefore, be a reference for the necessary accounts.
 

 Per Curiam. Decree accordingly.