MOREHEAD BANKING COMPANY v. A. TATE et al.

(Decided May 24, 1898.)

*Action on Bond—Corporation—Branch Bank—Bond of Cashier of Bank—Validity—Defences.*

1. Whether a Banking Company, chartered to do business in a certain place and without express authority to establish and conduct a branch at another place, can do so, is a matter for the State, through the Attorney General, to have determined by an action to vacate its charter.

2. Where a Banking Company established a branch bank in a place other than that where the corporation was chartered to conduct its principal place of business, and placed it in charge of a cashier who gave bond for the faithful discharge of his duties; *Held*, in an action on such bond, that the defendants could not plead as a defense that the bond was invalid because the company had no power to establish such branch.

3. Where, in the trial of an action on a bond executed to the " Morehead Banking Company of Burlington," and given by the defendants to the Morehead Banking Company, the jury find that the bond was given for the benefit and protection of the latter, and there was no appeal from such finding ; *Held,* that equity will treat the words "of B" as surplusage.

4. A bond given by a cashier of a branch bank for the faithful performance of his duties is not void by statute nor is it against public morals because the parent corporation may not have had the express authority to establish a branch bank.

CIVIL ACTION tried before *Adams, J.,* at October Term, 1897, of DURHAM Superior Court. There was a judgment for the defendants, and plaintiff appealed. The facts appear in the opinion.

*Messrs. Winston & Fuller* and *Graham, Green & Graham* for plaintiff (appellant).

*Messrs. J. A. Long, C. E. McLean* and *Shepherd & Busbee* for defendants.

FURCHES, J.: It is admitted that the plaintiff is a regularly chartered banking institution, having its place of business at Durham, N. C. Early in the year 1890 the plaintiff undertook to establish an agency or a "branch bank," as it is sometimes called, at Burlington, N. C. The defendant, A. Tate, was selected as the cashier of this agency at Burlington, and on the 19th May, 1890, entered into a bond in the penal sum of $15,000 for the faithful performance of all his duties as such cashier, to account for and pay over all monies received by him, etc., as such cashier to the plaintiff ; then said bond and and obligation to be void, but otherwise to be and remain in full force and effect.

Plaintiff brings this action and alleges that the defendant, A. Tate, has not faithfully discharged this duty, and has not kept faith with the plaintiff ; that he has

not accounted for and paid over the monies and effects which came into his hands as such cashier, and has broken the condition of his said bond and obligation.

Defendants admit the execution of said bond, deny any breach of the conditions, and allege that the bond was given to the Morehead Banking Company, "of Burlington"; that the Burlington concern was unauthorized, that it is against the policy of the State to allow a banking business to be done at Burlington without a charter, or to allow the Morehead Banking Company, of Durham, to do a banking business, under its charter, at Burlington.

It seems that the charter of the Morehead Banking Company states that its principal place of business shall be at Durham, N. C. It does not in express terms provide for the establishing of branch banks or agencies, as the charter of the Bank of New Hanover did. If it had, the case of *Worth* v. *Bank*, at this term, would have been direct authority for holding that the Burlington concern was not unlawful.

There was much discussion before us as to the rights pertaining to *de facto* corporations, and as to the rights and duties of parties dealing with such corporations. But none of the learning brought to our attention on this subject is in point, as it is admitted that the Morehead Banking Company is a regularly organized corporation, under and in conformity to legislative authority —its charter. It is therefore not only a *de facto* but a *de jure* corporation, and the defendants are all *natural* corporations, *sui juris*. So, we have a plaintiff capable of contracting and being contracted with, and we have defendants capable of contracting and being contracted with, and we have a contract that these parties have

made and entered into.    The question then is, shall this contract be enforced?

We are not prepared to say that the expression in the plaintiff's charter that its "principal place of business shall be at Durham" by implication authorized the establishment of a branch bank or agency at another point. In our opinion the matter of allowing banks to establish branch banks or agencies is at least of doubtful if not bad policy.    We have recently seen very damaging results growing out of such policy, in the case of the Bank of New Hanover.    We know it has been the policy of the State to allow branch banks from almost our earliest history.    This was allowed in the Bank of Cape Fear, the State Bank and others.    And our reported cases will show that the Bank of New Hanover is not the only warning we have against this policy. *Bank* v. *Locke*, 15 N. C., 529.    This Court would not be willing to sanction this practice of establishing branch banks or agencies to do a banking business unless they are *expressly* authorized by legislative authority contained in the charter. And any bank without having this express grant, undertaking to establish such branch establishments, will lay itself liable to have its charter vacated; but this is a matter for the State, the Attorney General, and not for the defendants in an action in which they are trying to avoid the obligation of their contract with the plaintiff.

It is claimed that this bond states that defendants "are held and firmly bound unto the Morehead Banking Company 'of Burlington, N. C.'    But the jury have found that it was given to the plaintiff for its protection, and there was no appeal from this finding.    This being so, equity will treat the words "of Burlington" as surplusage, and hold the defendants to the same degree of lia-

bility as if these words were not in the instrument. *Armistead* v. *Bozman*, 36 N. C., 117.

So, the only question remaining to be considered is as to whether this bond is void on the ground of public policy. Usurious contracts are against public policy, and at one time the courts would not enforce them. *Shober* v. *Hauser*, 4 Dev. and Bat., 91, but this was because they were declared void by statute. The policy of the State is the same now that it was then. But, now, the contract is not void, but only the interest is forfeited. This is so, because it is so declared by our statute. *Code* Section 3836 ; *Carter* v. *Ins. Co.*, at this term. Gambling contracts are void, but this is so because they are so declared by statute. *Code* Sections 2841, 2842. *Gooch* v. *Faucett*, at this term. There are other contracts, not only contrary to the policy of the State, but also to the *public morals* of the State, that the Court will not enforce.

But this contract is not one of those declared void by statute, nor is it one that affects the public morals of the State, which call upon the courts to withhold its process and judgment from enforcing it.

There is another question involved in this case that this Court does not care to encourage—bad faith.

The matters discussed disposes of the appeal, and other questions presented are not considered. There is error.

New trial.